Good morning. I'm Jolie Lipsig, appearing for Appellant and Petitioner Anthony Lamar Dean, and I'd like to reserve about three minutes for rebuttal, if I might. In this case, the evidence was so weak that the prosecution was unable to approve either alternative theory of guilt to a unanimous jury. We know this for two reasons. The jury was hung as to whether Mr. Dean used a weapon, the firearm, so they could not decide that he was the actual shooter. They also sent out a note during deliberations stating that they thought there was a mandatory presumption that any person who was engaged in a robbery, even if they weren't the shooter, was guilty of first-degree murder. Other than the evidence of Robert Dean, a high school junior who gave very inconsistent statements, and we now know his statement was false, the remaining evidence that Mr. Dean was the shooter consisted of uncorroborated admissions and circumstantial evidence showing only that he was present at the scene of the crime during the robbery. Because California doesn't require unanimity on a theory of guilt, it essentially lightened the prosecutor's burden of proof. Some of the jurors convicted Mr. Dean as the shooter, and some convicted him as an accomplice. The misconduct committed by the prosecutor in this case, coupled with the jurors' confusion as to the theory of guilt for accomplice liability, bolstered the prosecution on both theories, and therefore was prejudicial error. I'd like to talk a little bit about the misconduct, the prosecutorial misconduct, which consisted of several different forms, but underlying all of it was a bad faith failure to investigate the evidence suggesting that Mr. Dean was not the shooter, and instead the shooter was Turtle Tim Jones. Because of their failure to investigate, they proffered false evidence to the jury in the form of Robert Dean's statement that he was an eyewitness to the crime, and we know this was false because of what happened at the subsequent trial of Turtle Tim Jones. When the prosecutor got up and said, we know Robert Dean was lying, they presented evidence to show that he was 300 feet away, peering through bushes in the dark, and could not possibly have made out the identity of the shooter from his vantage point. The prosecutor also vouched for Robert Dean's truthfulness at Mr. Dean's trial, and then at Turtle Tim's trial told the jury Robert Dean lied as to the exact same piece of information. Nothing changed with regard to Robert Dean's testimony between the two trials. The prosecutor also told the jury at Mr. Dean's trial that a taped confession by Turtle Tim Jones had been intentionally withheld by defense counsel to prevent the prosecutor from testing that evidence, when instead they failed to investigate. They never tried to get an expert to test the evidence, and instead decided to accuse the defense of shady tactics. This court has held in Bruno v. Russian that the prosecution can't do that. It's also held that the prosecution has an affirmative obligation to investigate the truth of its witnesses before it proffers them as telling the truth. The U.S. Supreme Court has indicated the same thing in Kiles v. Whitley, and more recently in Banks v. Dretke. There's lots of ways in which the prosecutor's argument misconduct about the tape prejudiced Mr. Dean. The tape was critical to the defense, which was primarily that Mr. Dean had no involvement in either the robbery or the murder. The tape exonerated him because in his confession to the murder and robbery, Turtle Tim didn't mention Mr. Dean. It also was best evidence that he was not the shooter, so the prosecutor's arguments about the defense withholding the tape and essentially falsifying evidence would have directly impacted that portion of the jury who based their conviction on the theory that Mr. Dean was the shooter. The prosecutor also vouched directly for the – well, it's sort of reverse vouching. He told the jury that DeAnton Reeves lied, and I'd like to read what he said. He said, I think that what was going on here was that Mr. Reeves altered the story to try and say that Turtle Tim had admitted being the person who did the shooting as opposed to Mr. Dean. Well, when the prosecutor says, I think what happened is this witness lied, that's vouching. With regard to the testimony of Robert Dean, I touched on this already, and this is perhaps the most egregious error. The prosecutor went forward with an eyewitness that they either knew or should have known was lying. Now, the government faulted me for not proving that the prosecutor actually had conducted this experiment that proved he was lying before Mr. Dean's trial. Well, if they didn't conduct it, then they absolutely should have because they're proffering it as the truth. The prosecutor told the jury Robert Dean told the truth. And without investigating, they can't go forward on that and then at a subsequent trial say, oh, now we've investigated and now we know it's true, but we just forgot to tell Mr. Dean that or forgot to tell Mr. Dean's attorney that. Excuse me. Now we know it's false, which is what they told the jurors at Turtle Tim's trial. Coupled with their vouching and then their inconsistent arguments at two trials that one piece of evidence was true and then it was false or one piece of evidence was false and then it was true, something very fishy was going on in the Stockton District Attorney's Office. We can't exactly know what it is. Without Robert Dean's statements, there was just no evidence that Mr. Dean was the shooter because the other testimony that came in on that point was in the form of admissions that Mr. Dean purportedly made. And under California law, an uncorroborated admission cannot prove an element of the offense. So to the extent that Lysandra will ---- But would his coming in and getting rid of his shirt and saying it's evidence and have corroborated? Might have corroborated that he committed a robbery. Might have corroborated that he was scared as a young black man who had just witnessed a friend of his. I don't know if it corroborated a statement that ---- That he shot somebody? Uh-huh. I don't know what it corroborates. Corroborates that he might have been afraid. Corroborates that he was guilty of something, but certainly not of being the shooter. There were people in the parking lot. There were some people. They didn't witness the crime, but there were people who testified that they saw people in the parking lot, and he might have been afraid that his clothing would identify as being nearby during this crime. I don't see how that corroborates the elements of the offense. It certainly corroborates, you know, that maybe he was guilty or maybe he was afraid of something. Seems pretty weak to corroborate guilt of murder, of being the shooter in a murder. And I did want to touch on the statements, purported statements that he made to people that he was the shooter. First of all, there's only one witness who provided any information about that. That was a crack cocaine addict, Lysandra Owens, who the prosecutor himself had to tell the jury was a total liar when he got up in argument. And she, all she said was that Clara May Dean told her that Tanisha Love told her that Mr. Dean told her she shot a man. She also made a statement that she heard Mr. Dean say he shot a man. But it's only one witness, and this witness was vigorously impeached. So I think the evidence that he was the shooter was very slight. The trial court at the end of the trial said he didn't think he was the shooter after hearing all of the evidence. So, and two of the jurors didn't think he was the shooter. Now, the jurors who convicted on the aiding and abetting theory, and we know there were two of them from the breakdown in the hung jury on the firearm enhancement, they would have been affected. Their verdicts were poisoned by this instructional problem. The jury thought there was a mandatory presumption that all participants in a robbery are guilty of felony murder. That's wrong under the law. The trial court failed to answer the jury's question, and the jury was not instructed on this element of intent, which the California Supreme Court has said the prosecutor bears the burden of proving. And in ruling on this issue on direct appeal, the California Court of Appeal applied the wrong United States Supreme Court cases. So their decision was contrary to Federal law. They didn't apply Bolenbach, U.S. v. Bolenbach, which deals with jurors' confusion. And when jurors have confusion about an issue, the trial court has an affirmative obligation to make sure they understand. The trial court just referred back to instructions, none of which answered the jury's question. And in fact, the special circumstance instruction, which arguably could have answered the jury's question, or might have demonstrated that the jurors did find Ader in a better liability, was incorrect. The version of the instruction that the jurors were given told them that a defendant had to have the requisite intent, not the defendant. And the judge also instructed the jurors that Turtle Tim Jones was by law an accomplice. And therefore, the jurors might have believed that any perpetrator, any defendant having the requisite intent meant that all of the participants in the felony, the robbery, would have also had the requisite intent. And I know it's a little confusing, but I think the government is trying to use that confusion to their advantage. Again, it's because the jury was not unanimous. They didn't have to prove he fired the gun. They didn't have to prove that he had the intent required for accomplice liability. And by doing that, which they're allowed to do under the law, they deprived my client of due process and a fair trial. With regard to this instructional issue, which I think is very, very important in this case, the law says that for a prosecutor to prove aidor and a better liability for a felony murder, he has to have proved that the defendant intended to commit a robbery prior to or during the murder. The evidence of intent in this case was, in the words of the government attorney in the district court, extremely scant. The only evidence was through the statement of DeAnton Reeves, who recanted and said none of this ever happened when he got to court. But the statement he made to the police was, yeah, they decided to rob him. There's no they, who's they. It's very, very vague when that occurred, when any of it occurred. And in Turtle Tim's confession that was played for the jury, the tape of his confession, he says, I decided to rob him. I took the money. I shot him. And it completely undercuts any idea that Mr. Dean was a major participant in any of the crimes, let alone the shooter. And there's no indication that he had the intent to, necessary intent to meet the prosecutor's burden of proof. Do you want to save a little time? Yes, thank you. Okay. We'll hear from the Attorney General at this time, Mr. Whalen. Good morning, Your Honor. May it please the Court. Deputy Attorney General Pat Whalen for the appellee Plyler. I don't know who pulled the trigger. I don't know if it was Mr. Dean or Mr. Jones. Apparently the jury didn't either, in either trial. Neither jury found the personal use enhancement true with respect to either defendant. Well, if I understand the briefs correctly, the theory of the prosecution of Turtle was that he did it. That is correct. In Mr. Dean's trial, the focus was either one of them did, but it doesn't matter. In Mr. Jones' trial, the focus had narrowed to we have a little more evidence. Well, then why do you say that the jury in the second trial didn't know that he was the shooter? Because it sounds like they convicted him as the shooter. They didn't find his personal use enhancement true either, Your Honor. They didn't what? There's a — in addition to being charged with the robbery and the felony murder, there's an enhancement called a personal use enhancement for use of a firearm. Oh, I see. And neither jury found that true. So despite the prosecutor's argument that it was concededly more narrow in the Jones trial, it was still insufficient to convict that jury that Mr. Jones was the shooter. It doesn't look like anybody ever resolved who was the shooter. How do you justify the different positions taken by the prosecution vis-à-vis Robert Dean's statement? Well, it is correct that in the Dean trial, the State's position was that Dean was telling the truth, that he — his initial statement was that he had seen the event go down and watched his cousin, was Anthony Dean his cousin? Right. Watched the flash from the muzzle of the weapon nearly blow the victim's chest off. And consistently in that trial, the State's position was that statement was accurate. Then comes the follow-on trial of Turtle Tim Jones, and the State takes the position that Robert Dean was not telling the truth, that he could not have physically observed the crime. That is correct. Have I misstated anything? No. I might add a few facts that don't substantively change your question. I mean, you've got to remember, this was a case where virtually all of the witnesses gave multiple inconsistent statements. And so the testimony was, you know, the testimony was coming in. Brush that aside. How do you explain that the prosecution took such a 360-degree difference on the accuracy of the statements of Robert Dean? I don't attempt to explain it or justify it. I can't get into the minds of the respective prosecutors. My position is simply that it's not unconstitutional for a prosecutor to do that. What the Constitution requires is that the prosecution present its case, argue the inferences from the facts, and disclose any exculpatory evidence to the defense. That's exactly what happened here. There's nothing that constitutionally requires a prosecutor to select one view of the evidence and then adhere to that view for all time. There's nothing in the Constitution that prevents a prosecutor from changing their mind. Now, it turns out, as I mentioned in footnote 11 of my brief, these are two different prosecutors, and I don't honestly know why the San Joaquin district attorney's office assigned two different prosecutors for these two cases. It could be simply that they each had different views of the evidence. I don't know. That's speculation by everyone in this courtroom. But the point is there's no constitutional error in a prosecutor changing his mind or changing his focus, evaluating the new evidence, and talking to the jury after the first trial and saying, gee, I never thought of it like that. Here's a jury that I argued really that Mr. Dean was the shooter. And after talking with the jury, they pointed out a perspective on the case that I never saw. Any one of those things could have happened to explain why he, in fact, made the decision. But the point is there's no constitutional error. There's nothing wrong with taking inconsistent positions. In fact, all that the Constitution requires on this, the U.S. Supreme Court has said this, made it perfectly clear in Imbler v. Packman, footnote 34, they say, anytime you talk about a Brady obligation, that's really just the other side of the coin and can be reframed as a claim of knowingly using perjured testimony or false evidence. The evidence doesn't become false unless the prosecution has some other evidence that it withholds and says, oh, now I know this evidence is false. Well, if I disclose that evidence to the defense, as I'm required to do under Brady, they have everything I have. They can argue all of the inferences that they think flows from the evidence that may be counter to the inferences I'm arguing, and that's what the adversarial system is all about. Here's the evidence. Here's what I think it means. Here's what my opponent thinks it means. You, the jury, sort it out. That's all the Constitution requires. Roberts. Was it disclosed to the defense attorneys in Turtle Tim's case that this State took an inconsistent position with respect to Robert Dean's statement? I don't know specifically because I didn't handle that case. It was handled by another deputy, but I believe it was. And the reason I believe that is because there was a – when it got to the question of the admission of the tape, the tape recording, one of the arguments that the defense in the Jones case ultimately used to successfully keep the tape out was the inconsistent position. So I – from that, I suspect that the defense attorney in the Jones case was aware of the proceedings that had gone on in the Dean case. But I don't know. Was it argued to the jury? In which case, Your Honor? In Jones' case. Was it argued to the jury that the prosecution had taken an inconsistent position? Yes. No, and I don't think it could have been. That was not evidence that was before the jury. There was no evidence in the Jones trial about what the prosecutor said in the Dean trial. That wouldn't have been relevant testimony. What evidence was there in the Dean trial of his agreeing to rob the victim? It was a statement by Robert Dean that when Mr. Shripsema, the victim, came up and asked these gentlemen to buy him some beer, he had just gotten paid. So they said, we saw a lot of money in his wallet. We went in to the liquor store to buy the beer. This is Robert Dean's testimony? Yeah. And at that point, they said, well, we're going to buy the beer. And they decided – Dean's testimony – and they decided to rob him. So that's the extent of the testimony. And how does Dean know that? I mean, they – I think his purported basis of knowledge was subsequently talking to him. Didn't Dean get into the car, and they all discussed this, and that's how he found out? Right, at some point later. So that – admittedly, the evidence of intent – Well, there is that later discussion, too, about the money, you know, who gets the money. Right. They talk about dividing up the money. But, I mean, if anything, I think that really explains the prosecutor's alternative theories in this case in the Dean trial, which was either he's the shooter or he's the aider and abetter. It doesn't matter because he's equally culpable under either theory. If he's the shooter, then that's all you need to find, essentially. If he's not, then there's some additional mental elements. I guess you're proceeding from the point that there was evidence that Dean and Tatum – was that his name? Turtle Tim Jones. Turtle Tim Jones. Okay. We'll call him the Turtle. The Dean and the Turtle are going to rob this guy, and that's from Dean that you get that evidence. Is that right? From Robert Dean, the cousin of – Robert Dean. That's right. Okay. And that they come to this agreement to rob him inside the liquor store when they're in the process of buying the booze for him. And that Dean knows that a gun is going to be used in the robbery, the defendant, Dean. Is that right? Does Dean ever know? I don't think that Robert Dean's testimony was specific on that point as to whether there was any discussion in the store about the use of a gun. What evidence was there that the defendant, Dean, knew that a gun was going to be used, or was there any evidence to that effect? Well, there was evidence from Tanisha Love and Felicia Barnes, one or perhaps both of them, that he had been seen in possession of a similar gun one month before. Who had been in possession of it? Petitioner Dean, in this case. And there was also testimony from somebody, and it escapes me right now, that he had been seen with a gun the day before the murder. But that was it. There was two instances of him being seen with a similar type of gun as the one ultimately used. But let me just back up so I think where your question is going. The issue in this case was not whether or not there was sufficient evidence for the jury to find that he intended to use a gun. Well, that may have been similar to the elements needed for the personal use enhancement, but it wasn't necessary for the jury's verdict on the robbery and the corresponding felony murder. All they need to find is that he intended to commit or aid and abet the commission of the robbery. They don't have to find that he intended to do it with a gun. It has to be with a special circumstance or an intent to rob, I guess. Right. But what I'm saying is you can make all those findings with respect to the robbery, the felony murder, and the special circumstance without any particular finding about a gun. You can find, I don't know if he was the shooter, if he didn't hold the gun, didn't know the gun was there. All I know is that he intended to either do the robbery or aid in the commission of the robbery. And if he wasn't the shooter, then he either had intent to kill or major participant in reckless disregard for human life. Now, granted, finding either intent to kill or reckless disregard would probably encompass some inference about what he knew about the gun, I grant you. But the language of the instruction does not technically require them to make any finding specific to the gun. If there are no other questions, I'll submit it, Your Honor. I don't see any others. Thank you for your argument. I'll hear a rebuttal argument at this time. Counsel. Yes. I'd like to respond to a few things that opposing counsel said. First of all, the prosecution has more than a duty to just disclose evidence. They have a duty to investigate evidence before they represent to the jury that it is the truth. At the time of trial, they knew that there were two possible shooters in this case, Turtle Tim Jones or Anthony Dean. They chose not to investigate the truth of the allegations against Turtle Tim. In fact, it wasn't until the middle of the trial because the defense brought it up that they even checked the evidence to see if Turtle Tim's fingerprints were on it. And, in fact, it turned out that the bottle of beer in the victim's truck had Turtle Tim's fingerprints on it. And they didn't bother checking that out before they told the jury, hey, convict on either this theory that he was the shooter, which 10 of the jurors did, or convict on this other theory.  And the fact of the matter is, Imbler v. Packman suggests the prosecutor has an ongoing duty to disclose exculpatory evidence. What did they hide? They hid the test, the fact that they knew where Robert Dean was standing exactly and that he could not have seen what he claimed to have seen from that vantage point. And that was unequivocally proven at the subsequent trial of Tim Jones. And it was proven. But didn't the police officer say that, you know, unless you knew the person you were looking at, you couldn't make him out? The police officer said he was 300 feet away, it was in the dark, and I put somebody I knew in that spot. Or maybe he stood in that spot and had somebody he knew check it out, and it was broad daylight, not an hour after sundown as it was at the time of the crime. And he could not make out who the person was. He could not tell. He only knew it because he knew it. Robert Dean had no way of knowing it was Mr. Dean that was there. Robert Dean also said there was only one person there. When the evidence, the prosecutor went forward on the theory that both Turtle Tim and Mr. Dean were present during that. The evidence also showed that the only person who, well, there's no evidence that they went into the store to buy the beer together. So I don't know when this agreement supposedly occurred. Now, the court of appeal made a finding that they went into the store and in the store agreed to rob. The shopkeeper said Mr. Dean was in the store 20 minutes before the robbery. Then the kid came in and tried to buy some beer, and he was underage, so he went out. He never said Turtle Tim and Mr. Dean were in the store together discussing the robbery. There's just no evidence of that. The other thing is Robert Dean did not testify to any statements about deciding to rob. In fact, Robert Dean didn't testify to any statements about the money. According to one of the detectives on the case, Robert Dean told him that a few days after the crime he had a phone call with Mr. Dean, and he asked Mr. Dean, well, what did you do with the money? According to this officer, or he asked whether the victim had a lot of money. And Anthony Dean said yes. Well, that doesn't show anything about an intent to rob. It just shows he had knowledge of how much money the victim had because he could have been a robber after the fact, which is exactly the theory under which he would not have been guilty of felony murder if he had only robbed the victim after the fact, or perhaps Turtle Tim paid him off as was suggested by some other evidence in the case because he witnessed the crime. He would not have been guilty of felony murder, and yet the jury decided his guilt thinking that there was a mandatory presumption. I just ask the Court to look at the evidence in this case when it's determining whether there was any harm to Mr. Dean from the prosecutor's arguments. Also, the prosecutor knew or should have known at the time of Mr. Dean's trial that Robert Dean was lying. It's just clear as that. There's no excuse for them failing to conduct this experiment if they didn't. We don't actually know whether they conducted it before the trial and withheld it or whether they conducted it after the trial, but either way, it violates Mr. Dean's constitutional rights. I take it on that precise issue when the test was done to see whether Robert Dean could have actually observed this, that the record doesn't tell us one way or the other when that was done. That's correct. That's correct.  Thank you. Thank both sides for the argument. The case just argued will be submitted for decision, and the Court will stand in recess for the day.
judges: Canby, Thompson, Hawkins